USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-18-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

UNITED STATES OF AMERICA,

      Plaintiff,

      — v. —

BUY A HOME, LLC; *et al.*,

      Defendants.

------------------------------------------------------------------- x

10 Civ. 9280 (PKC)(AJP)

ECF Case

**CONSENT ORDER AS TO FIRST RESIDENTIAL MORTGAGE SERVICES CORPORATION AND SANDRA SCHANKS**

WHEREAS, on December 29, 2010, the Court entered a preliminary injunction (the "Injunction") against defendant Mitchell Cohen ("Cohen") and defendant Buy a Home, LLC ("Buy-a-Home") in the above-captioned matter (the "Action"); and

WHEREAS, pursuant to the Injunction, Cohen is enjoined from "participating in any real estate transaction that involves any request or application for mortgage insurance from HUD" and from "advertising, marketing to the public, or otherwise soliciting business involving the origination of any federally-insured home mortgage loans," *see* Injunction at ¶¶ 3-4; and

WHEREAs, the Injunction is binding not only upon Cohen and Buy-a-Home but also upon "their officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with any of them," *id.*; and

WHEREAS, the United States of America (the "Government") investigated whether Cohen participated in the business operations of Y-Rent New York, LLC ("Y-Rent"), a real estate brokerage firm operated by Cohen's wife, Marcia Kaufman ("Kaufman"), in violation of the Injunction; and

WHEREAS, based on its investigation, the Government concluded that Cohen willfully violated the Injunction by, among other things, participating in Y-Rent's sales transactions that involved applications for FHA-insured mortgage loans and soliciting business from Y-Rent's prospective buyers who were likely to seek FHA-insured mortgage loans; and

WHEREAS, First Residential and Schanks hereby stipulate to and acknowledge the following facts:

1. During all relevant times, First Residential has been a direct endorsement lender authorized to participate in FHA's mortgage insurance program. *See* 24 C.F.R. Part 203.

2. In 2010 and prior to the entry of the Injunction, First Residential originated more than 30 FHA-insured mortgage loans insured for Buy-a-Home customers.

3. In 2010, Schanks was a vice president at First Residential, and was the loan officer responsible for originating the FHA-insured mortgage loans for Buy-a-Home customers.

4. Shortly after the initiation of this Action, First Residential and Schanks were made aware that the Government alleged that Cohen and Buy-a-Home had fraudulently given prospective home-buyers inducements to purchase in the forms of (*i*) providing funds to the buyers' family members to make purported gifts to the buyers for down payments and (*ii*) paying off the buyers' debts to "repair" their credit scores.

5. On or about December 14, 2010, First Residential became aware of the entry of a temporary restraining order against Cohen and Buy-a-Home, and issued an e-mail to its employees, directing them not to originate mortgage loans for Cohen or Buy-a-Home.

6. On or about December 30, 2010, First Residential and Schanks received actual notice of the entry of the Injunction.

7. Upon receipt of the Injunction, First Residential provided a copy to Schanks, and reiterated to its employees to cease any and all business with Cohen and Buy a Home. First Residential did not implement any additional policy or procedure to require its loans officers and underwriters to scrutinize applications for FHA-insured loans to determine whether Cohen, Buy-a-Home, or individuals or entities acting in concert with Cohen or Buy-a-Home, participated in the underlying sales transactions.

8. From December 2010 to June 2011, First Residential did not have a firm-wide policy on e-mail retention, including e-mails relating to FHA-insured loans.

9. In late April 2011, Mohammed Ibrahim, a sales agent who worked at Buy-a-Home in 2010, contacted Schanks and asked her to meet with a prospective home-buyer at Y-Rent's offices to evaluate whether the buyer qualified for an FHA-insured mortgage. On the following day, Schanks met with the prospective buyer and Kaufman at Y-Rent's offices, and learned that Kaufman operated Y-Rent.

10. In April 2011, Schanks knew that Kaufman was married to Cohen.

11. In connection with referring customers to First Residential for obtaining FHA-insured mortgage loans, Kaufman told Schanks that Kaufman was the owner and

2

      operator of Y-Rent, and Cohen was not involved with Y-Rent. Schanks did not ask Kaufman about, or make any independent investigation into, whether Cohen participated in Y-Rent's real estate transactions or solicited business from any prospective home-buyers on behalf of Y-Rent.

12. From late April 2011 to June 1, 2011, Schanks received a number of applications for FHA-insured mortgage loans for prospective home-buyers referred by Y-Rent, and regularly visited Y-Rent's offices.

13. In May 2011, Schanks learned from Gregg Star, Cohen's former partner at Buy-a-Home, that Cohen maintained an office in the basement of Y-Rent's offices. Schanks shared with other senior executives at First Residential the information that Star provided concerning Cohen's maintaining an office in the basement of Y-Rent's offices. In response, First Residential directed Schanks to be careful.

14. After learning that Cohen maintained an office in the basement of Y-Rent's offices, Schanks did not further inquire into whether Cohen participated in Y-Rent's sales of residential properties involving FHA-insured mortgage loans or solicited business from prospective buyers interested in such transactions.

15. After learning of Cohen's presence at Y-Rent's offices, Schanks continued to receive applications for FHA-insured loans for prospective home-buyers referred by Y-Rent, and processed at least one such loan application.

16. On May 27, 2011, Schanks received an e-mail from a Y-Rent employee, stating that while Y-Rent did not yet have a record for a property on East 180th Street being sold to a buyer seeking a FHA-insured mortgage loan, "Mitch [Cohen] says we will have [the record] next Tuesday or Wednesday."

17. After receiving the May 27, 2011 e-mail mentioning Cohen, Schanks returned to Y-Rent on May 31, 2011, to process the loan application for the sale transaction involving the East 180th Street property. Specifically, Schanks did not make any inquiry into whether Cohen was complying with the Injunction.

18. On or about June 1, 2011, First Residential became aware that Cohen was involved in the business operations of Y-Rent, and stopped processing any loan application that it had received from Y-Rent.

      WHEREAS, First Residential and Schanks agree with the Government that they reasonably could have taken further steps to ensure compliance with the Injunction, and wish to enter into this Consent Order for purposes of ensuring future compliance with the Injunction, including to implement policies and practices that complement requirements of the FHA mortgage insurance program; and

ACCORDINGLY, IT IS ORDERED, ADJUDGED and DECREED that, pursuant to Federal Rule of Civil Procedure 65 and the Court's inherent authority, and to implement and enforce the Injunction, First Residential and Schanks shall be subject to the following:

1. For the duration of this Order, First Residential and Schanks, along with their officers, employees, agents, and servants, and any other person or entity in active concert or participation with any of them, are enjoined from engaging in any business dealing with Cohen, any entity owned in whole or in part by Cohen, or any entity for which Cohen is an employee or agent.

2. For the duration of this Order, First Residential and Schanks, along with their officers, employees, agents, and servants, and any other person or entity in active concert or participation with any of them, are enjoined from using the mails or wire transmissions, or causing the use of the mails or wire transmissions, to fraudulently obtain mortgage insurance from HUD.

3. Within 3 days after the entry of this Order, First Residential shall distribute a copy of this Order to all First Residential employees, agents, servants, attorneys, and to any person or entity who is acting on behalf of First Residential.

4. Within 15 days after the entry of this Order, First Residential shall implement and distribute a written policy regarding appropriate measures to avoid business dealings with Cohen to all First Residential employees, agents, servants, attorneys, and to any person or entity who is acting on behalf of First Residential.

5. Within 30 days after the entry of this Order, First Residential shall implement and distribute a written policy regarding appropriate methods and procedures for ascertaining whether, in connection with the origination of any FHA-insured mortgage loans, (i) a seller or a broker has provided any undisclosed inducements to purchase to a prospective home-buyer,

and/or (ii) a seller or a broker has paid off a prospective home-buyer's debts to artificially raise his or her credit scores (including through third party "credit repair" specialists), without disclosing the source of funds for such debt repayments.

6. Within 30 days after the entry of this Order, First Residential shall implement and distribute a written policy for ensuring all appraisals that First Residential obtains in connection with the origination of all FHA-insured mortgage loans are issued by appraisers who are independent from the seller(s), broker(s), buyer(s), and lender(s) involved in the relevant transactions.

7. Within 30 days after the entry of this Order, First Residential shall implement and distribute a written policy concerning the proper retention of electronic records, including e-mails, that relate to the origination of any FHA-insured mortgage loan.

8. Within 20 days of the distribution of the written policies required under Paragraphs 4 to 7 above, First Residential shall provide copies of such policies to the Government in accordance with Paragraph 16 below.

9. For the duration of this Order, First Residential shall make the following information available to any prospective home-buyer who provides information to or otherwise contacts First Residential concerning a FHA-insured mortgage loan: (i) a copy of HUD's settlement costs booklet (available at: *http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_12893.pdf*); (ii) written notice that the prospective buyer has the right to obtain his or her own attorney in connection with the sale of real estate brokered by Y-Rent; and (iii) written notice that, prior to closing, the prospective buyer has the right to obtain an inspection of the property at his or her own expense.

10. For the duration of this Order, and with respect to any real estate transaction that occurs following the entry of this Order, First Residential shall maintain all accounting and

business records, including all correspondence or communications, related to any FHA-insured mortgage loan originated by First Residential.

11. For the duration of this Order, First Residential shall have a corporate officer designated as the Compliance Officer, with the responsibility for ensuring compliance with all applicable laws and regulations pertaining to the origination of FHA-insured mortgage loans as well as the Injunction and this Order. Specifically, First Residential shall ensure that the Compliance Officer (i) is included in the making of any decision relating to any issue raised by a First Residential employee, agent, or customer concerning whether First Residential or Schanks is complying with the laws and regulations pertaining to the origination of FHA-insured mortgage loans, the Injunction, or this Order ("Compliance Issues"); (ii) prepares and maintains a quarterly compliance report that documents all Compliance Issues reported to First Residential and all decisions made by First Residential in response to these issues.

12. Within 20 days of the entry of this Order, First Residential shall make a payment to the Government in the amount of $7,500, as compensation for the costs of the Government's investigation.

13. For the duration of this Order, the Government shall have the right to verify compliance with this Order through any means available to the general public. Further, upon a request from the Government for any record pertaining to any policy or procedure at First Residential or any FHA-insured mortgage loan, First Residential shall provide such requested record to the Government within 10 days of its receipt of the request.

14. Nothing in this Order shall preclude, in the event of a violation of the Injunction or this Order, the Government from seeking a finding of civil contempt as against First Residential or Schanks or prosecuting First Residential or Schanks for criminal contempt.

15. Nothing in this Order shall constitute a release of any claim that the Government may have against any party, or preclude the Government from pursuing any civil or criminal enforcement action in the future.

16. Any notice required to be made to the Government under this Order shall be in writing and shall be sent (i) by overnight mail to the attention of Assistant U.S. Attorneys Li Yu and Cristine Irvin Phillips at the United States Attorney's Office, 86 Chambers Street, Third Floor, New York, NY 10007; and (ii) by electronic mail to li.yu@usdoj.gov and cristine.phillips@usdoj.gov.

17. This Order shall remain in effect for two years.

*For the Government:*

Dated: New York, New York
October 14, 2011

PREET BHARARA
United States Attorney

By: _____
LI YU
CRISTINE IRVIN PHILLIPS
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734/2696
li.yu@usdoj.gov
cristine.phillips@usdoj.gov

*For First Residential:*

Dated: Garden City, New York
October 14, 2011

By: _____
KEVIN J. KEATING, Esq.
LAW OFFICES OF KEVIN J. KEATING
666 Old Country Rd., Suite 501
Garden City, New York 11530
Tel.: (516) 222-1099
kevin@kevinkeatinglaw.com

*For Schanks:*

Dated: New York, New York
October 14, 2011

By: _____
RICHARD F. X. GUAY, Esq.
MEYER, SUOZZI, ENGLISH AND KLEIN
1350 Broadway, Suite 501
New York, NY 10018
Tel.: (212) 239-4999
rguay@msek.com

Dated: New York, New York
10-18, 2011

SO ORDERED:

_____
P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

8